**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIM. NO. 08-448-1 |
| v. | : | CIV. NO. 10-6835 |
| | : | |
| MARTEL KIRKLAND | : | |

**ORDER**

### I. Background

On July 31, 2008, the grand jury charged Petitioner Martel Kirkland and three co-conspirators with mail fraud (Count 2); aggravated identity theft (Counts 3, 5, 7, 10, and 12); credit card fraud (Counts 4, 6, 9, 11, and 12); wire fraud (Count 8); uttering a forged security (Count 13); conspiracy to commit these offenses (Count 1); and aiding and abetting. *(Doc. No. 1)*; see also 18 U.S.C. § 371 (conspiracy); id. § 1341 (mail fraud); id. §§ 1029(a)(2), (b)(1) (credit card fraud); id. §§ 1028A(a)(1), (c)(4), (c)(5) (aggravated identity theft); id. § 1343 (wire fraud); id. § 513(a) (uttering a forged security); id. § 2 (aiding and abetting).

On March 19, 2009, Petitioner pled guilty to all thirteen Counts of the Indictment pursuant to a written Plea Agreement that included an extensive appellate and collateral attack waiver. *(See generally Change of Plea Hr'g Tr., Mar. 19, 2009.)* Petitioner was represented at the Change of Plea Hearing by Martin Isenberg, Esq. *(Id.)* I conducted the plea colloquy and accepted Petitioner's guilty plea. *(Id.)*

On July 30, 2009, the grand jury returned a Superseding Indictment. *(Doc. No. 97.)* At Petitioner's February 1, 2010 sentencing hearing, I granted the Government's Motion to Dismiss Counts 1-13 of the Superseding Indictment and sentenced Petitioner based on his guilty plea to the Original Indictment. *(See Sentencing Hr'g Tr. 28:10-17, Feb. 1, 2010.)*

1

I imposed a total term of 180 months incarceration, consisting of 60 months imprisonment on each of Counts 1, 2, 4, 6, 8, 9, 11, and 13, to be served concurrently; and 24 months on each of Counts 3, 5, 7, 10, and 12, to be served consecutively with each other and with the 60-month term, with the total 180 months to run consecutively to the term of imprisonment imposed on Petitioner in an unrelated matter by the Eastern District of Michigan (Crim. No. 06-20337-1). *(Doc. No. 162.)* I also imposed five years of supervised release, and ordered Petitioner to pay $30,616.30 in restitution plus interest, and a $1,300 special assessment. *(Doc. No. 162.)*

On February 22, 2010, Petitioner, still represented by counsel, took a direct appeal. *(Doc. No. 174.)* On May 6, 2010, the Third Circuit granted the Government's Motion to Enforce the Appellate Waiver and for Summary Affirmance. *(Doc. No. 190.)* On June 30, 2010, Petitioner moved for a Panel Rehearing or a Rehearing *en Banc*, arguing, *inter alia*, that the appellate waiver "did not exclude [him] from filing an appeal if the Court imposed an unreasonable sentence above the final sentencing Guideline range." *(Case No. 10-1458, Doc. No. 003110200545 at 3.)* Petitioner alleged that I "imposed a sentence of 180 months and then tacked on another 19 months to run consecutive to the 180 months." *(Id. at 2.)* On July 12, 2010, the Third Circuit denied Petitioner's Rehearing Petition. *(Id., Doc. No. 003110213214.)*

On May 17, 2010, Petitioner filed a *pro se* Motion, alleging ineffective assistance of counsel, but did not request any relief. *(Doc. No. 192.)* On May 18, 2010, I nonetheless ordered the Clerk of Court to furnish Petitioner with blank copies of this Court's standard § 2255 and *in forma pauperis* forms. *(Doc. No. 193.)*

On July 28, 2010, Petitioner asked me to appoint counsel to help him prepare a § 2255 Motion and a Writ of Certiorari to the Supreme Court. *(Doc. No. 200.)* Because Petitioner apparently was still represented by Mr. Isenberg, I denied his request. *(Doc. No. 201.)*

On November 22, 2010, Petitioner filed a *pro se* § 2255 Motion. *(Doc. No. 202.)* On December 1, 2010, the Government moved to dismiss. *(Doc. No. 204.)* Although I ordered Petitioner to respond to the Government's Motion by January 3, 2011, he has not done so. *(See Doc. No. 205.)*

### II.     Petitioner's *pro se* § 2255 Motion

Petitioner apparently seeks relief on two grounds. First, he argues that I sentenced him to a term of imprisonment that exceeded the Guidelines range. Petitioner alleges that his Guidelines range was 81-191 months, but that he has "a total of 256 months." *(Doc. No. 202.)* Petitioner's second argument is almost unintelligible. He states: "In the very beginning of the fraud it [the "dollar amount"] was $266,000 but when it came time to start building the case, the dollar amount came to $30,000."

### III.    The Government's Motion to Dismiss

The Government argues that I should dismiss Petitioner's § 2255 Motion because Petitioner knowingly and voluntarily waived his right to collateral attack. *(Doc. No. 204.)* The Government further argues that enforcing the waiver would not result in a miscarriage of justice because I imposed a Guidelines sentence and Petitioner does not allege "an absence of jurisdiction, an illegal sentence, or any other miscarriage of justice." *(Id. at 9.)*

## IV. Standards

Before ruling on a § 2255 Motion, the court must "hold an evidentiary hearing unless the motion and files and records of the case show conclusively that [the petitioner] is not entitled to relief." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (internal quotation marks omitted); see also 28 U.S.C. § 2255. The court must accept the petitioner's factual allegations as true "unless they are clearly frivolous on the basis of the existing record." Id. (internal quotation marks omitted).

"[A] waiver of appellate or collateral rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice." United States v. Randazzo, No. 11-cv-2411, 2011 WL 1743395, at *3 (E.D. Pa. May 6, 2011) (citing United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008)). "[The] court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008).

In determining whether a miscarriage of justice would result from enforcement of the waiver, the court should consider, *inter alia*, "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), . . . and the extent to which the Petitioner acquiesced in the result." Mabry, 536 F.3d 231, 242-43 (internal quotation marks omitted). A court should apply the "miscarriage of justice" exception "sparingly and without undue generosity." United States v. Ligons, 395 F. App'x 916, 918 (3d Cir. 2010) (internal quotation marks omitted).

## V.     Discussion

Because, as I explain below, the record conclusively shows that Petitioner is not entitled to relief under § 2255, I will dismiss his Motion without a hearing.  Cf. Sears v. United States, No. 08-229, 2011 WL 1642008, at *9 (W.D. Pa. May 2, 2011) ("[I]n light of the enforceability of the waiver to file a § 2255 motion, there is no reason to conduct an evidentiary hearing to consider petitioner's claim . . . .").

Petitioner signed a written Plea Agreement in which he "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right . . . arises under . . . 28 U.S.C. § 2255, or any other provision of law." *(Plea Agreement ¶ 8, Doc. No. 61.)* The Agreement also provided that Petitioner may file a *direct appeal* only in four limited circumstances: (1) if the government appeals; (2) if Petitioner's sentence "exceeds the statutory maximum" on a given count of conviction; (3) if I "erroneously departed upward pursuant to the Sentencing Guidelines"; and (4) if I "imposed an unreasonable sentence above the final Sentencing Guideline range." *(Id. (emphasis added).)*

Before accepting Petitioner's guilty plea, I conducted an extensive colloquy during which I placed Petitioner under oath and questioned him closely to determine that he was competent and able to enter a plea, and that he was knowingly and voluntarily giving up his rights in entering the plea. *(Change of Plea Hr'g Tr. 2-9.)* During the colloquy, the prosecutor orally recited the terms and stipulations of the Plea Agreement, including the appellate and collateral attack waiver. *(Id. at 12.)* Petitioner thus acknowledged that by pleading guilty, he was "expressly and voluntarily waiving, meaning giving up forever, all [his] rights to appeal or collaterally attack [his] conviction, sentence or any other matter relating to this prosecution and

that this waiver includes a waiver of the right to appeal or collaterally attack under any provision of law." *(Id. at 26.)* I accepted Petitioner's guilty plea, finding, *inter alia*, that he had knowingly and voluntarily given up his right to appeal or collaterally attack his conviction. *(Id. at 40-41.)*

In these circumstances, I will enforce the collateral attack waiver. Cf. United States v. Tirado, No. 08-CR-44, 2011 WL 590115, at *3 (W.D. Pa. Feb. 10, 2011) ("[I]t was explained to Mr. Tirado that the plea agreement included the waiver of the right to file a motion to vacate sentence under 28 U.S.C. § 2255. Mr. Tirado never indicated that he did not understand any of the terms of the plea agreement. . . . [H]is waiver of his collateral rights was knowing and voluntary.").

None of the exceptions to Petitioner's waiver—which permit certain claims on "direct appeal"—apply because Petitioner has filed a *collateral* Motion. *(See Doc. No. 61, ¶ 8(b))*; see also Ackerland v. United States, 633 F.3d 698, 702 (8th Cir. 2011) ("The agreement does say that Ackerland waives his right to appeal . . . 'reserving only the right to appeal from an upward departure from the applicable Guideline range.' This reservation, however, applies only to a direct appeal, not to a collateral attack under § 2255 . . . ."). But cf. United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001) ("Of course, the same exceptions to the waiver of the right to appeal, if they arise, would be available to the waiver of the right to collateral attack.").

Assuming, *arguendo*, that the paragraph 8 exceptions apply to a collateral attack, the Third Circuit already has enforced Petitioner's waiver, rejecting his argument that I imposed a sentence above the Guidelines. *(See Case No. 10-1458, Doc. No. 003110213214.)* Petitioner's objection to the "dollar amount" of the fraud, insofar as I can understand it, does not fall into any of the exceptions.

Finally, no miscarriage of justice would result from enforcing the collateral attack waiver: Petitioner has not pointed to any errors in his conviction or sentencing. See Mabry, 536 F.3d at 242-43; see also Ligons, 395 F. App'x at 918 ("Examining the factors listed above, any error here was far from clear, . . . and was not objected to at the time that the sentence was imposed.").

Even if I were to consider the substance of the arguments Petitioner seeks to raise, they are meritless. Cf. Randazzo, 2011 WL 1743395, at *6 ("[T]here is no miscarriage of justice in enforcing Randazzo's collateral attack waiver because the three claims he seeks to raise in his habeas petition are meritless.").

Petitioner concedes that his Guidelines range was 81 to 191 months imprisonment, but apparently believes that he received or is serving "a total of 256 months." *(Doc. No. 202.)* At Petitioner's sentencing hearing, I adopted the facts and conclusions as set out in the Revised Presentence Investigation Report and concluded that the "effective guideline range is . . . 81 to 191 months imprisonment." *(Sentencing Hr'g Tr. 7:15-24.)* I sentenced Petitioner, who has thirteen prior adult convictions, to a term of imprisonment within the Guidelines range: 180 months. *(Id. at 14, 17; Doc. No. 162).* Petitioner was thus not sentenced "out of [his] guidelines." See Watts v. United States, 386 F. App'x 245, 248 (3d Cir. 2010) ("It is undisputed that Watts's sentence falls within the Guidelines range . . ., and so he may not challenge his sentence by way of a § 2255 motion.").

With respect to his second ground for collateral relief, Petitioner states: "In the very beginning of the fraud it was $266,000 but when it came time to start building the case, the dollar amount came to $30,000." *(Doc. No. 202.)* It is not clear whether Petitioner is challenging the "dollar amount" of the fraud loss/attempted loss that was used to calculate Petitioner's guideline

7

range or the $30,616.30 in restitution I imposed.  *(See Change of Plea Hr'g Tr. 11, Mar. 19, 2009 ("$260,000 was the fraud loss and attempted loss caused in furtherance of the criminal activity jointly undertaken by the Petitioner and his co-conspirators."); see also Doc. No. 162.)*

Nor does Petitioner explain why the "dollar amount" is incorrect.  Petitioner stipulated and agreed that "$260,000 was the fraud loss and attempted loss caused in furtherance of the criminal activity jointly undertaken by the Petitioner and his co-conspirators; . . . and the Court should calculate the Petitioner's sentencing guideline range based on this amount." *(Doc. No. 61 at 5-6.)* Petitioner also agreed "to pay any fine and/or make restitution as directed by the Court." *(Id. at 2.)* I imposed restitution of $30,616.30—the actual loss suffered by Petitioner's victims. *(See Sentencing Hr'g Tr. 23, Feb. 1, 2010.)* Accordingly, Petitioner's second ground for relief is meritless.

## VI. Conclusion

**AND NOW**, this 24th day of June, 2011, upon consideration of Petitioner's *pro se* § 2255 Motion *(Doc. No. 202)* and the Government's Motion to Dismiss *(Doc. No. 204)*, the Government's Motion *(Doc. No. 204)* is **GRANTED.**  Petitioner's *pro se* § 2255 Motion *(Doc. No. 202)* is hereby **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Paul S. Diamond
_____
**Paul S. Diamond, J.**